JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Gregory Pappas ("Greg"), appeals the trial court's judgment finding him liable for damages in favor of plaintiff-appellee, Restaurant Developers Corp. ("RDC"). Finding no merit to the appeal, we affirm.
 {¶ 2} This matter arises from a lawsuit filed by RDC, the franchiser of Mr. Hero Restaurants, against Greg, BM Enterprises, Inc. ("BME"), and Barbara Pappas ("Barbara") to recover delinquent franchise fees.
 {¶ 3} In June 1999, RDC entered into a franchise agreement and sublease with BME (franchisee) for the operation of a Mr. Hero restaurant in North Olmsted. Barbara signed the agreement on behalf of BME as its president, and her father, Greg, signed the agreement as Chairman and CEO. Barbara and Greg also signed as personal guarantors of the franchise agreement and sublease.
 {¶ 4} Throughout her tenure operating the franchise (1999-2005), Barbara struggled with delinquent payments to RDC that were due under the franchise agreement. In November 1999, Greg sent a notice to Ron Wolfe ("Wolfe"), then-president and CEO of RDC, indicating that he resigned as Chairman and CEO of BME. *Page 4 
 {¶ 5} In February 2000, Wolfe sent a letter to Greg stating that all outstanding debt on the Mr. Hero Restaurant was fully retired and, as of February 3, 2000, Greg had no further liability for any aspect of the Mr. Hero business.
 {¶ 6} Then in the summer of 2005, Greg met with officers of RDC and offered to sell Mr. Hero to RDC because of the continued unsuccessful operation of the restaurant. RDC declined the offer and insisted that Barbara and BME pay the delinquencies of approximately $30,000 with forgiveness of interest and penalties. Greg declined this offer, but received permission from RDC to allow him to find a buyer from which he could recoup some of his investment and pay off the delinquencies. Greg promised to pay RDC the delinquencies if RDC approved the sale of the franchise to a potential buyer, Danny Holdings, Inc. ("DHI").
 {¶ 7} Greg entered into negotiations with Edward Salzgeber ("Salzgeber") and Donald Straw ("Straw"), owners of DHI, for the sale of the restaurant. In December 2005, RDC approved DHI as a franchise candidate, subject to DHI finishing a formal four-week training program. Once Straw and Salzgeber finished the training program, RDC would transfer the franchise to DHI. RDC also required that BME remain the franchisee and be liable for the operation of the restaurant until the training and transfer of the franchise was complete. *Page 5 
 {¶ 8} Subsequently, Greg and BME entered into an operating agreement with DHI to purchase the restaurant for $70,000. As part of the agreement, Greg was required to pay all the franchise delinquencies to RDC. DHI was obligated to pay Greg $15,000 as a down payment and $2,500 for inventory. Greg promised DHI that he would pay RDC the delinquencies with the $15,000 down payment. Greg signed the agreement individually and as a duly authorized officer of BME.
 {¶ 9} Greg asked Straw and Salzgeber to accompany him to the bank to cash the checks. At the bank, Greg cashed the checks and told Straw and Salzgeber that he was leaving for Florida and he refused to pay off the RDC arrearages because he had paid them enough money.
 {¶ 10} Despite this incident, DHI began operating the Mr. Hero restaurant the next day on December 10, 2005 and continued operation of the restaurant until June 2007, when RDC took possession of the restaurant. During this time, Greg never paid RDC the delinquencies ($37,000) and DHI never obtained the franchise license.
 {¶ 11} In the interim, RDC initiated suit against BME for $30,505.18, the balance due to RDC under the franchise agreement, in April 2006.[1] The instant action arose by the amended complaint filed in August 2006, naming BME, Greg, *Page 6 
and Barbara as defendants and including a claim against Greg and Barbara for their guaranties and promises to pay monies owed to RDC.
 {¶ 12} In December 2006, Greg counterclaimed against RDC, alleging breach of contract, tortious interference, abuse of process, and fraud for interfering with his agreement with DHI. Greg also filed a third-party complaint against DHI, alleging breach of contract, unjust enrichment, and conversion for its failure to pay the full purchase price for the restaurant ($70,000).
 {¶ 13} DHI counterclaimed against Greg and sought $178,000 in damages. DHI alleged breach of contract, fraud, and fraud in the inducement for inducing DHI to enter into a transaction to purchase the Mr. Hero restaurant on the condition that Greg satisfy the delinquencies, when Greg had no intention of doing so. DHI also claims that Greg misrepresented certain operation costs that were imperative to the successful operation of the restaurant.
 {¶ 14} The matter proceeded to a bench trial in October 2007, at which the court found BME, Barbara, and Greg jointly and severally liable to RDC in the amount of $34,074.06 [$37,074.06-$3,000 (set-off for equipment retrieved by RDC)]. The court also found BME and Greg jointly and severally liable to DHI *Page 7 
in the amount of $19,777.82.[2] The court also ordered that BME, Barbara, and Greg were jointly and severally liable for all costs of the action.
 {¶ 15} Greg now appeals the trial court's judgment as it pertain to RDC, raising two assignments of error for our review. In the first assignment of error, he argues that the trial court erred in holding him liable for the delinquent franchise fees because he was fully released from all liability to RDC.
 {¶ 16} In reviewing the trial court's judgment in a bench trial, we apply an abuse of discretion standard of review, with the guiding presumption that the fact-finder's findings are correct. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273;Parma Park W. Apts. v. Guzman, Cuyahoga App. No. 89262, 2008-Ohio-226. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal at 80.
 {¶ 17} We note that the trial court does not abuse its discretion in entering a judgment if the judgment is supported by "`some competent, credible evidence *Page 8 
going to all the essential elements of the case * * *.'" Id., quotingC.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
 {¶ 18} Greg argues that the letter dated February 3, 2000 from Wolfe constituted a valid contract and released him from all liability for the restaurant. He further argues that after his resignation from BME in 1999 and the "release letter" dated February 3, 2000, he never personally guaranteed any debt to RDC. He claims that any assistance he provided to BME after his resignation and release was as a "good father" and not as a "personal guarantor." Thus, he maintains that he could not be held personally or jointly and severally liable to RDC for the debts of BME. We disagree.
 {¶ 19} In the instant case, it is undisputed that BME, Barbara and Greg were contractually obligated under the original Mr. Hero franchise agreement to pay certain fees, royalties, rent charges, expenses, and items during BME's operation of the franchise. These items with interest totaled $37,074.06.
 {¶ 20} In November 1999, Greg advised Barbara and RDC that he was resigning as Chairman and CEO of BME. In a letter to Greg dated February 3, 2000, Wolfe stated that the letter served to "evidence the full retirement of all outstanding debt on the Mr. Hero Restaurant * * * in which you were listed as Chairman and personal guarantor. Therefore, as of February 3, 2000, you have no further liability for any aspect of the Mr. Hero business, which is the subject *Page 9 
of this release." The court found that this release was limited to the then outstanding debt. The court further found that it was not RDC's intention to release Greg from all debt not yet incurred. Thus, the court held that Greg, as guarantor, was not released from BME obligations that accrued after February 3, 2000.
 {¶ 21} The court also found that Greg's course of conduct in continuing to pay off BME's arrearages after February 2000 confirmed his intent to be bound by his original guarantee for future indebtedness. Greg promised RDC in 2005 that he would pay BME's $30,000 indebtedness from the sale of the restaurant to DHI. This was a condition precedent to DHI's obligations under the operating agreement with RDC.
 {¶ 22} Furthermore, in the purchase agreement between Greg and DHI, Greg agreed that he "shall pay all debts and expenses arising from the operation of the Store and franchise up to and including the day Danny Holdings begins operating the Store." Thus, the evidence reflects that Greg was not released from any future obligations to RDC post-February 2000.
 {¶ 23} Accordingly, we find that there is competent, credible, evidence in the record to support the trial court's judgment finding Greg personally and jointly and severally liable to RDC.
 {¶ 24} Thus, the first assignment of error is overruled. *Page 10 
 {¶ 25} In the second assignment of error, Greg argues in the alternative that the trial court erred in finding that he was entitled to only a $3,000 set-off for the equipment retrieved by RDC.
 {¶ 26} Although Greg maintains that the value of the equipment and fixtures far exceeds the $3,000 value assigned by the trial court, he fails to provide any evidence establishing the current value of the equipment. He relies on Barbara's testimony, which reflects that she paid $100,000 for the equipment when she took possession of the restaurant in 1996. Barbara also testified that she never had the equipment appraised and that she did not know the current value of the equipment. A review of Greg's testimony also reveals that he never established a current value of the equipment.
 {¶ 27} It is well established that the duty to provide a transcript for appellate review falls upon the appellant. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384. Absent a transcript of the proceedings, a court will presume regularity and the validity of the judgment of the trial court. Ostrander v. Parker-FallisInsulation Co. (1972), 29 Ohio St.2d 72, 74, 278 N.E.2d 363.
 {¶ 28} Greg has provided this court with only a partial transcript of the trial proceedings for our review. Without a complete transcript, we are unable to review the court's determination of the equipment's current value. Therefore, we *Page 11 
must presume the validity of the trial court proceedings and affirm the trial court's judgment.[3]
 {¶ 29} Accordingly, the second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and MARY J. BOYLE, J., CONCUR
[1] In May 2006, DHI intervened as a third-party defendant.
[2] The court dismissed with prejudice Greg's counterclaim against RDC, Greg's third-party complaint against DHI, and DHI's counterclaim against Greg.
[3] That part of the transcript which Greg did provide indicates that the equipment was worth approximately $15,000-$20,000 eleven years earlier, and the equipment was never fully operational. *Page 1